FILED
2010 Aug-16 PM 02:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION

TIMOTHY BLUE,                     }
                                  }
     Plaintiff,                   }
                                  }        CIVIL ACTION NO.
v.                                }        09-AR-0864-S
                                  }
DUNN CONSTRUCTION COMPANY,        }
INC.,                             }
                                  }
     Defendant.
```

## MEMORANDUM OPINION

Plaintiff, Timothy Blue ("Blue"), sues defendant, Dunn Construction Company, Inc. ("Dunn"), alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et seq.*, ("Title VII"), and 42 U.S.C. § 1981.[1] Before the court are Dunn's motion for summary judgment and motion in limine seeking to exclude certain evidence from trial. For the reasons that follow, Dunn's motion for summary judgment will be granted and Dunn's motion in limine will be deemed moot.

## FACTS[2]

---

[1] In his complaint, Blue states that he "set forth his Title VII and 42 U.S.C. § 1981 claims in one Count." (Doc. 1 at 4). Neither party addresses a separate claim under § 1981 in any subsequent filing. This court, like the parties, will analyze Blue's Title VII claims and purported § 1981 claim together.

[2] Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In accordance with Rule 56(c), the narrative statement of facts includes facts that are undisputed by the parties. Where there is a dispute, the facts are presented in the light most favorable to the non-moving party. "The movant 'bears the initial responsibility of informing the district court of the basis of its motion' by identifying those portions of the record that demonstrate the absence of genuine issues of material fact." *Baldwin County, Ala. v. Purcell Corp.*, 971 F.2d 1558, 1563 (11th Cir. 1992) (quoting *Celotex Corp. v. Catrett,* 477 U.S.

Blue, an African-American, began working for Dunn as a laborer in an asphalt crew in 1995. Blue later worked in the positions of raker, screed operator, asphalt spreader, and paver operator.  In September, 2005, Blue's Foreman quit, leaving a vacancy at the Foreman position. When filling an open Foreman position, Dunn first gives candidates a "trial run" in the position of "Acting Foreman". An Acting Foreman performs Foreman duties for an evaluation period of unspecified length, during which Dunn attempts to determine whether or not the candidate should be promoted to a permanent Foreman position. An Acting Foreman is paid on an hourly basis, but, unlike other hourly employees, is guaranteed to be paid for a minimum of forty hours per week, regardless of whether or not the Acting Foreman actually worked forty hours for that particular week. A permanent Foreman is salaried. When Blue's Foreman quit, Dunn's General Superintendent, Billy Joe Nichols ("Nichols"), made Blue an Acting Foreman.  Blue served as an Acting Foreman for approximately fifteen months.  In January, 2007, Blue was promoted to the position of Foreman. Blue claims that in February, 2008, five of his best crew members were transferred to other crews, making it harder for him to perform satisfactorily. Dunn disputes

---

317, 323, 106 S. Ct. 2548, 2553 (1986)). Thereafter, the burden shifts to the non-movant to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact or that the moving party is not entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(e); *see also Celotex,* 477 U.S. at 324, 106 S. Ct. at 2553. Conclusory allegations or legal conclusions are not enough. *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

that the crew members were transferred.  On April 27, 2008, while working on a job titled the "Hudco job", the screwman on Blue's crew was operating his machine and a screw tore a hole in a section of tin on a building. On April 28, 2008, Blue was demoted from Foreman to Operator.  Both the promotion and demotion decisions were made by Nichols. Following Blue's demotion, Mike Wallace ("Wallace"), a Caucasian, was promoted to Blue's former Foreman position.

On May 1, 2008, Blue filed a charge with the EEOC. After receiving his notice of right to sue, Blue filed this lawsuit on May 4, 2009, alleging that he had been discriminated against based on his race. Blue claims that, because of his race, (1) Dunn denied him pay and benefits by keeping him as an "Acting Foreman" for an impermissibly long period of time, (2) Dunn denied Blue the necessary assistance needed to adequately perform his job, and (3) Dunn demoted him.  Blue further claims that the above-referenced adverse actions were also taken in retaliation for protected activity.

## ANALYSIS

Blue does not present any direct evidence of Dunn's alleged discriminatory or retaliatory intent. Therefore, all of his Title VII claims will be analyzed under the burden-shifting framework set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), and *Texas Dep't of Community Affairs v. Burdine*,

3

450 U.S. 248, 101 S. Ct. 1089 (1981). Under the *McDonnell-Douglas* framework, the plaintiff must first make out a *prima facie* case of discrimination or retaliation. Once the plaintiff establishes his *prima facie* case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for taking the adverse employment actions. If the defendant meets its burden of production, the plaintiff must present evidence showing that defendant's proffered nondiscriminatory reasons are mere pretext.

**Blue's claim based on his status as "Acting Foreman"**

To establish a *prima facie* case of Title VII discrimination, Blue must establish that Dunn committed an adverse employment action. Blue claims that by keeping him employed as an Acting Foreman for fifteen months, Dunn was depriving him of Foreman pay and benefits even though "Blue performed all of the duties of a Foreman", and that such deprivation constituted an adverse employment action (Doc. 29 at 7). Blue admits that most, if not all, Dunn employees who seek a Foreman position are first placed in the Acting Foreman position. Blue claims that his fifteen months as Acting Foreman was discriminatory because other, Caucasian employees served less time as Acting Foremen before being promoted.

In *Pennington v. City of Huntsville*, 261 F.3d 1262 (11th Cir. 2001), the Eleventh Circuit expressed its doubts that a plaintiff "can satisfy the elements of a prima facie case, particularly the adverse employment prong," when his claim is based on a delayed

4

promotion. *Pennington*, 261 F.3d at 1266. However, after noting its concerns about "delayed promotion" cases, the *Pennington* court reluctantly agreed that a plaintiff who "loses pay or an employment benefit from a delayed promotion" can, under the right circumstances, establish an adverse employment decision. While Blue's delayed promotion claim may have survived a Rule 12(b)(6) motion, in order to survive Dunn's Rule 56 motion Blue must still establish that his fifteen month stint as an Active Foreman actually constituted an adverse delay. There is no official policy on how long an employee must serve as Acting Foreman before being promoted to Foreman. Therefore, Blue cannot cite a deviation from company policy in his attempt to show an unreasonable delay. Instead, Blue attempts to prove discrimination by comparing himself to two white employees, Shane Watson ("Watson") and Joey Eustace ("Eustace"), who also went through the Acting Foreman trial period before becoming Foremen. Watson's personnel record reflects that he worked nine months as an Acting Foreman before becoming a Foreman. (Pl's Ex. 11 at 9). Neither Eustace's personnel record nor his testimony have been submitted to the court. In support of his claim that Eustace was promoted faster than he was, Blue submits his own testimony regarding Eustace's promotion, in which he states, "I don't know how long it took, but I know it was less than a year." (Doc. 19-1 at 32). Blue's evidentiary basis for alleging that his fifteen months as an Active Foreman was an adverse

employment decision thus rests on evidence of two white comparators, one of whom was promoted after nine months as an Active Foreman, and one of whom was promoted after some time "less than a year". This proffered evidence is woefully inadequate. Especially given the inherent difficulties in proving an adverse employment decision based on an alleged delayed promotion, evidence showing that two other employees who worked as Active Foremen for three and six months less than Blue did does not establish the required adverse employment action needed for a *prima facie* case.

Assuming *arguendo* that Blue had established his *prima facie* case based on delayed benefits, his claim would fail because he has not rebutted Dunn's proffered non-discriminatory reason for the delay. Dunn claims that Blue had difficulties managing his crew, and that concerns about his ability to lead a crew led to his being kept as an Active Foreman for fifteen months. In response to Dunn's proffered reason, Blue repeatedly points to a performance evaluation from December 31, 2007, which stated many positive things about Blue's performance. Blue's reliance on the December 31, 2007, evaluation is misplaced, as Blue received his promotion to Foreman in January 2008, less than a month after the evaluation was conducted. If Blue is attempting to argue that the positive evaluation conducted December 31, 2007, is evidence that Blue should have been promoted before January, 2008, such an argument is unpersuasive.

**Blue's claim based on transferred crew members**

Blue claims that Dunn "took the best five key employees off Blue's crew and assigned them to different crews indefinitely." (Doc. 29 at 11). Blue further alleges that "[t]he removal of key employees from Blue's crew made it difficult for Blue and his crew to complete the jobs they had been assigned." *Id.* at 12. Dunn disputes that the identified employees were removed from Blue's crew. Dunn further states that it was standard practice for crew members to be transferred between crews depending on how busy the various crews were. Even ignoring Dunn's evidence showing that most of the five crew members referenced were not actually transferred, and thus taking Blue's allegations as true, Blue's claim falls well short of establishing a *prima facie* case of discrimination, as he has not provided any evidence that would show a discriminatory intent.

In response to Dunn's Rule 56 motion Blue makes the conclusory statement that "critical crew members were removed from his crew and he was denied the necessary personnel to complete his job assignments when Caucasian Foreman were not treated in the same manner." (Doc. 29 at 67). However, Blue fails to name any of the Caucasian Foremen who were allegedly treated differently than he was treated. Blue has not produced **any** evidence concerning Dunn's alleged discriminatory intent behind the crew member transfers. A conclusory statement that others were treated differently, without

7

more, is insufficient to establish a *prima facie* Title VII discrimination case, and Dunn's Rule 56 motion will be granted as to Blue's claims based on the alleged transfer of crew members.

**Blue's Demotion**

It is undisputed that Blue can establish a *prima facie* case of race discrimination based on his demotion. He is a member of a protected minority, he suffered an adverse employment action, and he was replaced by a person outside his protected class. *See Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003). Dunn has proffered a non-discriminatory reason for Blue's demotion, namely, that he could not control his crew and thus did not perform satisfactorily as a Foreman. To support its proffered non-discriminatory reason, Dunn submits Blue's performance evaluations, which were scored lower than all other Foremen working for Dunn during that time. Dunn specifically points to Blue's evaluation of February, 2008, which states that Blue "[h]as a problem supervising employees. He gets too close to the employees and they take advantage of this." (Doc. 19-5 at 33). The evaluation further states that "Tim has not significantly improved in 2007. We will put someone helping Tim with his crew and monitor whether this helps. If it does not, then we have no choice but to make a change and place Tim back as an operator." *Id.* The only remaining issue is whether Blue has established a dispute of material fact as to whether Dunn's

proffered reason is pretext.

In support of his argument concerning pretext, Blue submits evidence of complaints about alleged discrimination made by other employees against Dunn (so-called "me too" evidence). Blue also submits his own testimony and testimony from other Dunn employees stating their opinion on whether or not Dunn was intentionally discriminating against Blue. Finally, Blue submits evidence that other Foreman had failed drug tests and otherwise behaved badly, but had not been demoted. At a hearing in chambers conducted on June 16, 2010, Dunn orally represented to the court that it believed some, if not all, of Blue's proffered evidence was irrelevant or prejudicial, and should not be considered. The court gave Dunn until June 25, 2010, to file an evidentiary motion stating its objections to the proffered evidence. On June 25, 2010, Dunn filed a motion in limine requesting that this court "exclude from evidence during the trial" certain categories of evidence. In his response to Dunn's motion in limine, Blue repeatedly notes that Dunn has moved only to exclude certain evidence from trial, and that "[a]t the summary judgment stage, parties do not need to present their proof in a form that would be admissible at trial." (Doc. 34 at 2). This court agrees with Blue that perhaps Dunn should have submitted its evidentiary motion as a motion to strike, rather than a motion in limine. However, the absence of a motion to exclude certain evidence at the Rule 56 stage does not mean that

this court must, or can, consider all evidence submitted. Rule 56 clearly indicates that a court may only consider "facts that would be admissible in evidence" when ruling on a motion for summary judgment. F.R.Civ. P. 56(e)(1). Therefore, this court will ignore the **form** of Blue's submissions, but will, in ruling on Dunn's Rule 56 motion, consider only **admissible** evidence.

**"Me too" evidence**

The Supreme Court has held that the admissibility of an employer's alleged discriminatory acts not directed specifically at the plaintiff "is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and the theory of the case". *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 388, 128 S.Ct. 1140, 1147 (2008). "Because Rules 401 and 403 do not make such evidence *per se* admissible or *per se* inadmissible," the district court has wide discretion concerning the admission of such evidence. *Id. See also Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261 (11th Cir. 2008).

Blue's proffered "me too" evidence consists of four EEOC charges filed against Dunn by African-American employees alleging race discrimination. One of the charges, filed in 2002, is too remote to be considered as evidence in this case. Of the remaining three charging employees, none were employed as Foreman, and none of them were demoted or terminated for reasons similar to Dunn's

proffered reason for Blue's demotion. Only one of the charges references alleged actions taken by Nichols, who is the decisionmaker at issue in this case. These factors combine to make the proffered evidence irrelevant to the instant action. Furthermore, even if the EEOC charges were relevant under FRE 401, they would be excluded as unfairly prejudicial under FRE 403. Any probative value of the EEOC charges, especially when such charges do not include a final determination, is substantially outweighed by the danger of unfair prejudice to the defendant. *See McWhorter v. Birmingham,* 906 F.2d 674, 679 (11th Cir. 1990), *reh'g denied*, 917 F.2d 570 (11th Cir. 1990). Therefore, Blue cannot rely on the EEOC charges in his attempt to prove Dunn's discriminatory intent.

**Opinion Evidence**

To the extent Blue attempts to include evidence of his own or other employees' subjective belief or opinion concerning Dunn's discriminatory intent, such evidence will be excluded. Rule 56 clearly states that oppositions to motions for summary judgment must be supported by **facts**, and not by opinion testimony. This court is highly doubtful that Blue's proffered witnesses would pass the *Daubert* test, as required for experts seeking to offer their opinions on ultimate issues. Therefore, no such opinion evidence will be considered.

**Comparator Evidence**

Blue attempts to prove pretext by offering evidence that

other, Caucasian Foremen employed by Dunn engaged in improper and irresponsible behavior, but were not demoted.  Dunn argues that this comparator evidence is irrelevant because none of the alleged comparators engaged in the type of conduct that caused Blue to  be demoted. In order to determine whether the proffered comparators are relevant, the court must first resolve the disputed issue of what, exactly, is or was Dunn's proffered reason for demoting Blue.

Dunn claims that Blue was demoted because of performance issues. Dunn specifically claims that Blue had the lowest rated performance evaluations of any Foreman, and that Blue had issues controlling his crew.  Blue claims that Dunn also represented that Blue had been demoted because of the accident on the Hudco job, which occurred one day before Blue's demotion.  It is undisputed that an accident like the one that occurred on the Hudco site would not normally be cause for the demotion of a Foreman.  Therefore, if Blue presents evidence that Dunn had represented that Blue had been demoted because of the accident on the Hudco job, such evidence would help to show pretext. Blue also correctly points out that if Dunn has given "shifting" reasons for his demotion, evidence of such shifting would also go to show pretext. *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189 (11th Cir. 2004).  Therefore, it is necessary to determine if the evidence proffered by Blue about Dunn's alleged "shifting" reasons for the demotion is admissible, and, if so, whether or not it establishes a dispute of

material fact as to Dunn's true motivations for the demotion.

In support of his contention that Dunn represented that his demotion was related to the Hudco job accident, Blue offers the testimony of his supervisor, Wayne Snell ("Snell"), and the testimony of another foreman, Matt Albright ("Albright"). In his deposition, Snell was asked about a diary he kept that documented incidents that occurred on particular days. The relevant questions and answers are as follows:

> Q: And do you see any notes to indicate what happened to cause Mr. Blue to be demoted
> A: Yes, Ma'am
> Q: What do you see
> A: On this one on the notes where he hit the building.
> ...
> Q: And who made the decision to demote Tim Blue?
> A: That would be my boss.
> Q: Billy Joe Nichols?
> A: And myself.
> **Q: And why was Tim Blue demoted?**
> **A: Because I don't think he was — he didn't take charge of his crew was the main thing**

(Doc. 19-3 at 33-34)(emphasis added).

Blue's reliance on Snell's testimony is misplaced. Nothing in Snell's testimony indicates that Blue was fired for the Hudco incident. Rather, Snell is testifying that there were notes concerning Blue's demotion on the journal entry that also included notes on the Hudco accident, but that Blue was demoted for not taking charge of his crew. The temporal proximity between the Hudco incident and Blue's demotion is undeniable. It therefore makes sense that notes about Blue's demotion and the Hudco incident

would be in the same or a nearby journal entry. This does not prove or even indicate that Blue was actually demoted **because of** the Hudco incident. In fact, Snell's testimony indicates just the opposite, namely, that Blue was terminated for not taking charge of his crew, which was, and is, Dunn's stated reason for the demotion.

Albright's testimony similarly does not assist Blue in his attempt to prove "shifting" reasons. Albright testified that he "believed" that someone from Blue's former crew had told him that Blue was demoted because of the Hudco incident. Even if Blue could get this inadmissible hearsay evidence before the court, the opinion of one of Blue's former crew members about Dunn's motivation for the demotion is inconsequential. Blue is thus left only with the temporal proximity between the Hudco incident and his demotion as evidence that Dunn has offered "shifting" reasons for the demotion. Dunn's proffered reason for the decision is supported by deposition testimony and the written evidence of Blue's poor performance evaluations. The mere temporal proximity of an incident which should not have led to a demotion to the actual demotion is not sufficient to establish that Dunn's proffered reason is pretextual.

Furthermore, if, *arguendo*, the Hudco incident did play some part in Dunn's decision to demote Blue, such a fact would not have been fatal to Dunn's Rule 56 motion. The court does not view an on-the-job accident committed by one of Blue's crew members and

Blue's "failure to control his crew" as separate and mutually exclusive reasons for Blue's demotion. In fact, a careless mistake by a crew member could easily be a logical extension of, and a direct result of, Blue's failure to properly supervise or control his crew. If the Hudco incident constituted the culmination of a long list of other incidents stemming from Blue's lack of control, its temporal proximity to the demotion does not imply a mal-motive.

Blue argues that even if the court only considers Dunn's proffered reason for the demotion, namely Blue's performance issues, he can still prove pretext by offering evidence that other, Caucasian employees engaged in bad behavior but were not demoted. In support of this contention Blue submits evidence showing that other Foremen had failed drug tests and/or had been arrested for driving under the influence ("DUI"), but had not been demoted from their positions as Foremen. Dunn argues that such evidence is irrelevant, as Blue was not demoted for failing a drug test or getting a DUI. The Eleventh Circuit has held that "[t]o establish discrimination in discipline, Plaintiff must show these things: '(1) that he belongs to a protected class under Title VII; (2) that he was qualified for the job; (3) that a similarly situated employee engaged in the same or similar misconduct but did not receive similar discipline.'" *Nicholas v. Bd. of Trs.,* 251 F. App'x 637, 642 (11th Cir. 2007)(quoting *Alexander v. Fulton County*, 207 F.3d 1303, 1336 (11th Cir. 2000). The question which this court

must decide, and which courts that are binding on this court have had difficulty determining, is what constitutes "same or similar misconduct." In *McDonald v. Santa Fe Trail Trans. Co.*, 427 U.S. 273, 96 S.Ct. 2574 (1976), the Supreme Court opined in a footnote:

> precise equivalence in culpability between employees is not the ultimate question: as we indicated in *McDonnell Douglass*, an allegation that other 'employees involved in acts against the employer of comparable seriousness were nevertheless retained...' is adequate to plead an inferential case that the employer's reliance on his discharged employee's misconduct as grounds for terminating him was merely a pretext.

*Id.* at 283 n. 11 (quoting *McDonnell Douglass*, 411 U.S. at 804)). Despite the fairly lenient standard announced, or at least suggested, by the Supreme Court in *McDonald*, many circuit courts, including the Eleventh Circuit, have "require[d] that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999); *See also Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 213 (5th Cir. 2004).

The misconduct of the other employees cited by Blue is far from being "nearly identical" to Dunn's proffered reason for Blue's demotion. This court believes that said misconduct is likely not "of comparable seriousness" either, and thus fails under both the Supreme Court's *McDonald* standard and the more restrictive Eleventh Circuit standard. Using drugs or driving drunk while off the job are entirely different from failing to control a crew while on the

16

job.  In fact, one could even say that they are "apples and oranges".  While Blue may believe that failed drug tests or DUIs are serious offenses that warrant demotion, it is not up to Blue to determine Dunn's standards for discipline.  An employer is allowed to assign different weights to different offenses, and is allowed to demote or not demote for whatever reason it chooses, so long as that reason is not a discriminatory one prohibited by federal statute. The evidence provided shows that Dunn may have valued on-the-job performance more highly than it did off-the-job issues such as failed drug tests.  Such evidence is irrelevant to Dunn's alleged discriminatory motives for Blue's demotion, and therefore cannot be relied on to show that Dunn's proffered reason for the demotion was pretextual.

All inadmissible evidence having been stricken, Blue is left empty-handed.  The only evidence Blue can rely on in his attempt to prove pretext is the temporal proximity between the Hudco accident and his demotion.  Especially when weighed against the testimony and performance evaluations that support Dunn's proffered, non-discriminatory reason, it is clear that Blue has failed to establish a dispute of material fact as to whether or not Dunn's proffered reason is pretextual, and Blue's claims based on his demotion will be dismissed under Rule 56.

**Retaliation**

In his complaint, Blue "avers that he has been denied pay,

denied the proper assistance to perform his duties, and demoted in retaliation for engaging in protected activity". (Doc. 1 at 7). In other words, Blue's retaliation claim is based on the same alleged conduct that his discrimination claim is based on, namely, Dunn's alleged failure to pay Blue as a Foreman, transfer of his crew members, and his demotion. Blue filed his EEOC complaint related to the instant action on May 1, 2008, **after** the alleged underpayment, transfer of employees, and demotion occurred. Therefore, the only protected activity that Blue can base his retaliation claim on, as it was stated in the complaint, is an EEOC charge he filed in 1999. Blue cannot make out a *prima facie* case of retaliation based on an EEOC charge filed seven years before the complained of actions occurred, especially when there is no evidence that the decisionmaker, Nichols, had knowledge of that complaint. Perhaps recognizing this deficiency, Blue attempts to change his retaliation theory in his response to Dunn's Rule 56 motion. There, for the first time, Blue asserts that his retaliation claim is based on Dunn's failure to re-hire Blue after his lay-off. Blue claims that he was not re-hired while other, Caucasian, former Dunn employees were re-hired.[3] (Doc. 29 at 71). Blue's assertion in his response to Dunn's Rule 56 motion can only be considered an attempt to amend his complaint.  Even if such an amendment were allowed,

---

[3] Dunn asserts no claims based on his lay-off, which occurred after his demotion.

which it is not, Blue's purported new claim is wholly without evidentiary support. Therefore, Blue has failed to establish a *prima facie* case of retaliation as proscribed by Title VII, and his retaliation claims will be dismissed under Rule 56.

## CONCLUSION

Blue has failed to establish that genuine issues of material fact exist as to any of his claims, and therefore his action will be dismissed with prejudice under Rule 56 by separate order.

DONE this 16th day of August, 2010.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE